UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) No. _____ ) |
| LOCAL 689, AMALGAMATED TRANSIT UNION, | ) ) ) |
| Respondent. | ) ) ) |

## PETITION TO VACATE ARBITRATION AWARD

Pursuant to 40 U.S.C. § 18304(c)(7), Washington Metropolitan Area Transit Authority ("WMATA" or "the Authority"), by and through counsel, petitions this Honorable Court for the entry of an Order vacating the general wage increases and the improved pension benefits granted by the Arbitration Award of a three (3) member arbitration panel (the "Board") led by Neutral Chairman Richard R. Kasher, which issued on November 4, 2009. As grounds for this Petition, WMATA states as follows:

### Nature of this Case

1. This is an action to vacate the general wage increases and improved pension benefits granted by an interest arbitration award (the "Award") issued in the matter of WMATA and Local 689, Amalgamated Transit Union ("Local 689" or the "Union") on November 4, 2009. The Award provides for increased wages and improved pension benefits in violation of the applicable legal standards and without reasoned explanation or analysis, in contravention of the National Capital Area Interest Arbitration Standards Act ("NCAIASA"), 40 U.S.C. § 18301 et seq.

## The Parties

2.  WMATA is a regional instrumentality and agency of the State of Maryland, the District of Columbia, and the Commonwealth of Virginia that was created and is governed by the Washington Metropolitan Area Transit Compact, as amended, (the "Compact").[1]  The purpose of WMATA is to coordinate the operation of transit services within the Washington, D.C. metropolitan area.

3.  Local 689, is affiliated with the Amalgamated Transit Union, AFL-CIO, whose members are employed by WMATA.

## Jurisdiction and Venue

4.  40 U.S.C. § 18304(c)(7) gives a party the right to seek judicial review of an arbitration award on the ground that "the arbitrator did not comply with the provisions of section 18303 of this title."

5.  The Court has original jurisdiction over this action under § 81 of the WMATA Compact (the "Compact"), codified at Md. Code §10-204.

6.  Venue in this Court is proper pursuant to the Compact and because the parties have a substantial presence in this judicial district.

## Governing Legal Authorities

7.  The Compact provides that WMATA is "an instrumentality and agency of each of the signatories…which shall be a body corporate and politic, and … shall have the powers and duties granted herein and such additional powers as may hereafter be conferred upon it pursuant to law."  Compact at § 4.

---

[1] For legislation by Congress, see P.L. 89-774, 80 Sta. 1324 (1966); P.L. 92-349, 86 Stat. 464 (1972); P.L. 92-517, 86 Stat. 999 (1972); P.L. 94-306, 90 Stat. 672 (1976); P.L. 100-285, 102 Stat. 82 (1988); P.L. 104-332, 110 Stat. 3884 (1996); P.L. 105-151, 111 Stat. 2686 (1997).

8. The Compact provides for arbitration of "any labor dispute involving the Authority and such employees where collective bargaining does not result in agreement." Compact at § 66 (c). The Compact further provides that the term "labor dispute" includes:

> Any controversy concerning wages, salaries, hours, working conditions, or benefits including health and welfare, sick leave, insurance or pension or retirement provisions but not limited thereto, and including any controversy concerning any differences or questions that may arise between the parties <u>including but not limited to the making or maintaining of collective bargaining agreements, the terms to be included in such agreements</u>, and the interpretation or application of such collective bargaining agreements and any grievance that may arise and questions concerning representation.

Compact at § 66 (emphasis added).

9. The NCAIASA, 40 U.S.C. § 18303(d), provides:

> (1) **Written award.** In resolving a dispute submitted to arbitration involving the employees of an interstate compact agency operating in the national capital area, the arbitrator shall issue a written award that demonstrates that all the factors set forth in subsections (b) and (c) [40 U.S.C. § 18303(b)-(c)] have been considered and applied.
>
> (2) **Prerequisites.** An award may grant an increase in pay rates or benefits (including insurance and pension benefits), or reduce hours of work, only if the arbitrator concludes that any costs to the agency do not adversely affect the <u>public welfare</u>.
>
> (3) **Substantial evidence.** The arbitrator's conclusion regarding the public welfare must be supported by substantial evidence.

(emphasis added). The term "public welfare" is defined in turn in subsection (a), 40 U.S.C. § 18303(a):

> **(a) Definition.** – In this section, the term "public welfare" includes, with respect to an arbitration under an interstate compact –
>
> **(1)** the financial ability of the individual jurisdictions participating in the compact to pay for the costs of providing public transit services; and
>
> **(2)** the average per capita tax burden, during the term of the collective bargaining agreement to which the arbitration relates, of the residents of the

-3-

>Washington metropolitan area, and the effect of an arbitration award rendered under that arbitration on the respective income or property tax rates of the jurisdictions that provide subsidy payments to the interstate compact agency established under the compact.

10. Subsection (b), 40 U.S.C. § 18303(b), which is incorporated into Subsection (d)(1), provides that an arbitrator rendering an arbitration award concerning WMATA employees "may not make a finding or a decision for inclusion in a collective bargaining agreement governing conditions of employment without considering" seven specific factors, including:

>**(2)** All available financial resources of the interstate compact agency.
>
>**(3)** The annual increase or decrease in consumer prices for goods and services as reflected in the most recent consumer price index of the Washington metropolitan area, published by the Bureau of Labor Statistics….
>
>**(7)** The public welfare.

11. Subsection (c), 40 U.S.C. § 18303(c), also incorporated in Subsection (d)(1), provides:

>**(c) Ability to finance salaries and benefits provided in award.** – An arbitrator rendering an arbitration award involving the employees of an interstate compact agency operating in the national capital area may not, with respect to a collective bargaining agreement governing conditions of employment, provide for salaries and other benefits that exceed the ability of the interstate compact agency, or of any governmental jurisdiction that provides subsidy payments or budgetary assistance to the interstate compact agency, to obtain the necessary financial resources to pay for wage and benefit increases for employees of the interstate compact agency.

12. Taken together, these four (4) Subsections of Section 18303 establish explicit procedural and substantive requirements that an arbitration award concerning the terms and conditions of employment covering employees of WMATA must meet. In particular, they explicitly require that any award that increases pay rates or benefits is dependent on the financial ability of WMATA or the individual jurisdictions participating in the Compact to pay for those

increases. This inquiry necessarily requires the arbitrator to take into account the state of the finances of WMATA and the participating jurisdictions.

13. The Findings section of the statute, 40 U.S.C. § 18301, explicitly confirms the conclusion that Congress intended to impose mandatory obligations on arbitrators rendering awards subject to the NCAIASA. Among those obligations is the requirement that the arbitrators must expressly determine that any wage increases could be financed by WMATA and the participating jurisdictions under prevailing economic conditions. Section 18301(a)(6) provides:

> **(6)** imposition of mandatory standards applicable to arbitrators resolving arbitration disputes involving interstate compact agencies operating in the national capital area will ensure that wage increases are justified and do not exceed the ability of transit patrons and taxpayers to fund the increase; . . . .

Section 18301(a)(4) further finds that higher operating costs for public transit in the area "cannot be offset by increasing costs to patrons, since this often discourages ridership and thus undermines the public interest in promoting the use of public transit[.]"

## Factual Allegations

14. WMATA and the Union are parties to a collective bargaining agreement ("CBA") executed on July 10, 2006, which covers the period from May 1, 2004 through June 30, 2008.

15. Section 601 of the CBA provides, in pertinent part, that all matters in dispute when collective bargaining negotiations reach impasse "shall be arbitrated as provided in the provisions of this Agreement dealing with the arbitration of future contracts."

16. Section 106 of the CBA governs arbitration of future contracts and provides that issues in dispute when collective bargaining negotiations reach impasse shall be resolved through arbitration by a tri-partite Board of Arbitration as is consistent with the dictates of Section 66(c) of the Compact.

17. In May 2008, WMATA and the Union commenced negotiations over the terms and conditions for a successor collective bargaining agreement.

18. WMATA and the Union reached impasse in August 2008 over certain terms and conditions, including, but not limited to, wages, pensions, and the time frame for initiating disciplinary action.

19. The terms and conditions in dispute were submitted for interest arbitration pursuant to Sections 106 and 601 of the parties' CBA in accordance with Section 66(c) of the Compact.

20. On or about September 10, 2008, in accordance with the procedure set forth in section 106 of the CBA and as provided for in the Compact, the parties established a Board of Arbitration, which consisted of Thomas R. Roth (Union Board Member), R. Theodore Clark, Jr. (WMATA Board Member), and Richard R. Kasher (Neutral Chairman).

21. WMATA and Local 689 submitted extensive pre-hearing briefs to the arbitration panel.

22. The Board of Arbitration held hearings on February 10, 11, 12, 17, 18, 19, March 4, 5, April 27, 28, 29, 30, and June 1, 2, and 3, 2009.

23. The record created from the hearings consists of more than 500 exhibits and over 3,600 pages of transcript.

24. WMATA and Local 689 submitted extensive post-hearing briefs to the arbitration panel.

25. On November 4, 2009, the Board issued a 15-page Award. It contains a mere two (2) pages of "Observations by the Chairman," which constitutes the entire discussion in the Award of the prevailing economic conditions and their implications for the award, and only four

(4) pages detailing the Neutral Chairman's decisions regarding those terms and conditions which he concluded would not be resolved by maintenance of the status quo. A copy of the Award is attached hereto as Exhibit A and incorporated by reference.

26. Without any further elaboration as to the evidence relied upon or the weight afforded thereto, the Award states that "the Chairman has given full consideration to the economic conditions extant between that date [September 2008] and the date of this Award" and that "[t]he parties' proposals have been weighed in that context." Ex. A at 9. The Observations noted that the nation's current economic crisis represents the "most dramatic downturn in the nation's economy since the 'Great Depression.'" Id. Further, the Award states that "the economy of the nation and the Washington, D.C. Metropolitan Area is in a state of flux" and that "[o]ne would be hard pressed to predict where the economy will be at the end of the year 2010, when some economists have predicted that the recession 'will be over,' much less to predict where the economy will be when this Agreement is subject to re-negotiation on July 1, 2012." Id. at 9-10. These observations constitute the totality of the economic "analysis" contained in the Award.

27. On this basis, and without further discussion of economic matters or the financial ability to pay of WMATA or the participating jurisdictions, the Board awarded a General Wage Adjustment as follows:

> Effective July 1, 2008 – 2% lump sum payment**
> Effective July 1, 2009 – 3% general wage increase
> Effective July 1, 2010 – 3% general wage increase
> Effective July 1, 2011 – 3% general wage increase
>
> **To receive the 2% lump sum payment as provided above, the employee must have been on the employment rolls as of the date of this Award. The lump sum payment shall be based upon the total straight-time hourly wage earnings (including scheduled run overtime for Operators and Station Managers) between July 1,

>     2008 and June 30, 2009. The lump sum payment shall also be
>     payable on the same basis to any employee who retired on or after
>     July 1, 2008.

Ex. A at 11.

    28.    With regard to "Pensions," the Award, in its entirety, provides:

>     Insofar as the parties' pension proposals are concerned, the
>     Chairman takes notice of the fact that the Transportation
>     Employees Retirement Plan Trustees have adopted a proposal to
>     amortize 2008 asset losses over a thirty year period, as well as a
>     change in the calculation of assets for valuation purposes by
>     adopting a five year "smoothing period". Thus, no proposals
>     increasing pension formulas or changing the character of the Plan
>     from a defined benefit plan to a plan requiring employee
>     contributions shall be implemented as a result of this Award.

Ex. A at 12.

    29.    In granting general wage adjustments, the Award also increased pension benefits in two respects. For current retirees, an increase in wages results in a corresponding increase in retirement benefits. For current employees, the wage adjustment increases their ultimate retirement benefit by increasing their "average compensation" (the employee''s compensation averaged over a period of four (4) years).

    30.    The general wage increases and improved pension benefits granted by the Award are invalid as a matter of law, because the Board failed to follow the procedural and substantive requirements of the NCAIASA.

    31.    Nowhere in the Award does the Board discuss the critical statutory factor, whether WMATA or the participating jurisdictions have the ability to pay for the increased wage rates and improved pension benefits. The Award thus fails to comply with the requirement in Section 18303(d)(1) that it must "***demonstrate[ ]*** that all the factors set forth in subsections (b) and (c) have been considered and applied." (emphasis added).

32. Further, nowhere in the Award does the Board make the required statutory conclusion that "any costs to the agency [resulting from the grant of any increase in pay rates or benefits] do not adversely affect the public welfare[,]" a term that includes "the financial ability of the individual jurisdictions . . . to pay for the costs of providing public transit services[.]"  The Award thus fails to comply with Section 18303(d)(2).

33. The Award further violates Section 18303(d)(3) in that it points to no evidence in the record, much less "substantial evidence," that purportedly would support a finding that the WMATA or the participating jurisdictions have the financial ability to pay for the increased wage rates and improved pension benefits that it grants without adversely affecting the public welfare.  As noted, the Award does not discuss the financial standing of the participating jurisdictions.

34. In addition to these violations of Subsection (d), the Award's grant of general wage increases and enhanced pension benefits also violates the substantive requirements of Subsection (b), because it does not consider or discuss the mandatory statutory factors that are a prerequisite to making a finding or decision for such increases.  These criteria include the available financial resources of WMATA, the recent decrease in consumer prices for goods and services in the Washington metropolitan area, and the "public welfare," as defined to include the financial ability of the participating jurisdictions to pay for the costs of increased wage rates for the Fiscal Years 2010-2012.

35. The Award's grant of general wage increases and enhanced pension benefits also violates the substantive requirements of Subsection (c).  First, the Award adopts as a basis of the Neutral Chairman's decision, a decisional standard that Congress never authorized – consideration of "a result that the parties likely would have achieved had they reached agreement

through direct negotiations." Ex. A at 9.  Second, the Award fails to apply the standard that Congress did enact in Subsection (c).  It provides for salaries and other benefits for Fiscal Years 2010-2012 that exceed the ability of WMATA and the individual jurisdictions to obtain the necessary financial resources to pay for in this economic environment.

36. The record shows that the finances of the Compact jurisdictions are under unprecedented strain due to high unemployment and job losses, and substantial decreases in current and projected tax revenues.  These pressures on public finances have led to reductions in public outlays across the board, including wage freezes and job furloughs and reductions in force for public employees of the jurisdictions participating in the Compact.

### Grounds for Vacating the Arbitration Award

#### COUNT ONE
#### (40 U.S.C. § 18303)

37. The allegations of the foregoing paragraphs are incorporated as realleged herein.

38. The general wage increases and improved pension benefits granted by the Award should be vacated because the Award violates the NCAIASA, the Board exceeded its powers, the Award is arbitrary or capricious, and/or the arbitrator did not comply with the provisions of 40 U.S.C. § 18303.

    (a) The Award fails to comply with the requirements for a final award specified in 40 U.S.C. § 18303(d).  Specifically, the Award:

        (i) Does not demonstrate that all of the factors set forth in 40 U.S.C. §§ 18303(b) and (c) have been considered and applied, as required by Subsection 18303(d)(1);

        (ii) Does not contain any conclusion that the costs to WMATA of an increase in wages and/or pension benefits would not adversely

                    affect the "public welfare," as required by Subsection 18303(d)(2); and

        (iii)    Does not demonstrate reliance on substantial evidence to support the conclusion that the "public welfare" would not be adversely affected by the increase in wages and/or pension benefits, as required by Subsection 18303(d)(3).

(b)    The Award does not indicate that the Board exclusively applied the mandatory criteria identified in 40 U.S.C. § 18303(b), factors that, in particular, precluded the Board from considering evidence regarding terms and conditions of employment at transit systems outside the Washington Metropolitan Area;

(c)    The Award provides for wage increases and improved pension benefits that exceed the funding ability of WMATA and/or the governmental jurisdictions that provide subsidy payments or budgetary assistance to WMATA, in violation of 40 U.S.C. § 18303(c).

## COUNT TWO
## (AWARD IS ARBITRARY AND CAPRICIOUS)

39.    The allegations of the foregoing paragraphs are incorporated as realleged herein.

40.    The Award should be vacated because it is arbitrary and capricious insofar as it grants increases in wages and pension benefits despite the overwhelming evidence of economic difficulties and resulting hardships, and there is no rational connection between the award of increased wages and pension benefits and the record evidence.

## COUNT THREE
## (BOARD EXCEEDED ITS AUTHORITY)

41. The allegations of the foregoing paragraphs are incorporated as realleged herein.

42. The general wage increases and improved pension benefits granted by the Award should be vacated because the Board exceeded its authority, and the Award cannot be fairly corrected. Specifically, the Board fashioned an Award that increased wages and pension benefits out of whole cloth without any rational connection to the record evidence.

### Relief Requested

WHEREFORE, WMATA respectfully requests that this Court vacate the general wage increases and improved pension benefits granted by the Arbitration Award issued by the Board led by Neutral Chairman Richard R. Kasher on November 4, 2009, and grant WMATA such other relief as may be just and proper in this case.

Respectfully submitted,
 /s/ Lesley Pate Marlin
Robert G. Ames, Bar No. 03372
Lesley Pate Marlin, Bar No. 16556
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4000
(202) 344-8300 (facsimile)
rgames@venable.com
lpmarlin@venable.com

Carol B. O'Keeffe, General Counsel
Bruce P. Heppen, Deputy General Counsel
WMATA
600 Fifth Street, NW
Washington, DC 20001
(202) 962-1234
(202) 962-2550
cokeeffe@wmata.com
bheppen@wmata.com

Counsel for WMATA

-12-