UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
**Greenbelt Division**

| | | |
|---|---|---|
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 8:09-cv-3030-PJM |
| LOCAL 689, AMALGAMATED TRANSIT UNION, | ) ) ) ) | |
| Respondent. | ) ) | |

**WMATA'S SUPPLEMENTAL BRIEF REQUESTING COMPELLED DISCLOSURE OF COMMUNICATIONS BETWEEN BOARD MEMBERS KASHER AND ROTH**

Pursuant to and in accordance with the Court's July 11, 2011 Memorandum, the Washington Metropolitan Area Transit Authority ("WMATA") hereby responds to the Court's request for on-point authority directly addressing several questions. As explained below, WMATA respectfully submits that the Court possesses the authority and is, indeed, obliged to compel the disclosure of the undisputed communications that occurred solely between Board Members Kasher and Roth and excluded Board Member Clark.

Once again in this litigation, the Court faces uncharted territory and must address a question of first impression. At issue now is the propriety of one-on-one communications between the neutral chairperson of a tripartite arbitration board and a partisan board member, where that partisan board member served in multiple roles by also acting not only as the party's advocate but also the party's principal fact witness during the arbitration.

The National Capital Area Interest Arbitration Standards Act ("NCAIASA") vests the Court with the responsibility of reviewing, upon request, interest arbitration awards involving

WMATA and vacating any award, in whole or in part, if it meets one of the seven delineated circumstances.  See 40 U.S.C. § 18304(c)(1)-(7).  One of the grounds requiring the Court to vacate is that "there was partiality or misconduct by the arbitrator prejudicing ***the rights*** of a party[.]"  Id. at § 18304(c)(5) (emphasis added).  In its Second Renewed Motion for Summary Judgment, WMATA asserted that Mr. Kasher and Mr. Roth engaged in misconduct by excluding Mr. Clark from their secret communications about the Second Supplemental Opinion, thereby prejudicing WMATA's right to due process.  The secret communications also prejudiced WMATA because of Mr. Roth's service, over WMATA's objection, in multiple roles, which presumptively allowed him to re-testify as the Union's principal fact witness without the opportunity for further cross-examination by WMATA.

As to the issue of misconduct, the Union has not – and cannot – point to any authority permitting the undisputed one-on-one communications between Mr. Kasher and Mr. Roth.  The NCAIASA does not authorize, much less presume entitlement to, secret communications between two members of the tripartite arbitration board.  The professional responsibility rules for labor arbitration, upon which both Mr. Kasher and the Union apparently rely, simply do not address tripartite arbitration.  See Code of Professional Responsibility for Arbitrators in Labor-Management Disputes, Preamble, Scope of Code (stating that it "does not apply to partisan representatives on tripartite boards"), available at <http://naarb.org/documents/NAACODE07.pdf>.

Indeed, the sole source addressing tripartite arbitration panels, albeit in a slightly different context, is the American Arbitration Association's Code of Ethics for Arbitrators in Commercial Disputes ("Code").  Because the Code contains the considered, collective opinion of experts in the field of tripartite arbitration, it represents the best analogous source for guidance on the inappropriateness of communications exclusively between two members of an interest arbitration

panel to the exclusion of the third member. Although the Code recognizes that party-selected arbitrators, which it refers to as "Canon X" arbitrators, may be predisposed towards that party, it plainly requires them to avoid undisclosed communications with the neutral arbitrator:

> ***Unless otherwise agreed*** by the arbitrators and the parties, a Canon X arbitrator ***may not communicate orally with the neutral arbitrator*** concerning any matter or issue arising or expected to arise in the arbitration ***in the absence of the other Canon X arbitrator***. If a Canon X arbitrator ***communicates in writing with the neutral arbitrator***, he or she shall ***simultaneously provide a copy of the written communication to the other Canon X arbitrator***. . . .

Canon X, (C)(5) (emphasis added).

Moreover, in this case, to address WMATA's objection to Mr. Roth's multiple roles,[1] Mr. Kasher decreed ***in writing*** at the outset of the arbitration proceedings that it was not his "intention to meet with Mr. Roth or Mr. Clark on an ex-parte basis unless they both agree to such a procedure." See 11/5/08 Ltr. from R. Kasher to T. Roth, R. Clark, and R. Ames.[2] WMATA relied on Mr. Kasher's representation on this issue. Although WMATA agreed at the close of the hearings to *ex parte* communications between Mr. Kasher and partisan board members in an attempt to see if the disputed issues could be resolved, in whole or in part, Mr. Clark's correspondence to Mr. Kasher clearly demonstrates that he did not consent to additional *ex parte* communications with respect to the actions that the Board needed to take at the Court's direction to prepare the Second Supplemental Opinion. See 3/11/11 Ltr. from R. Clark to R. Kasher.

---

[1] In objecting to Mr. Roth's multiple roles at the outset of the arbitration proceedings, WMATA relied on In re Northwest Airlines, Inc., No. 33765, 1987 WL 65332 (Flager, 1987). That case rejected a party's request to have its partisan member serve as a witness at the hearing because of the inherent risk of the partisan arbitrator improperly introducing additional testimony during an executive session of the arbitration board.

[2] Mr. Kasher's decision of record on this point simply cannot be reconciled with his statement to the Court during the July 7, 2011 teleconference that he only serves as the neutral arbitrator on tripartite interest arbitration panels if the partisan arbitrators consent in advance to *ex parte* communications with him.

Thus, Mr. Kasher and Mr. Roth engaged in misconduct when they communicated secretively without the consent of Mr. Clark to prepare the Second Supplemental Opinion.

As to the issue of prejudice, WMATA has explained how the secret communications were prejudicial "per se," as they denied due process to WMATA and presumptively allowed the Union's principal witness to re-testify without being subject to further cross-examination. That is all that WMATA can reasonably be expected to show without access to the actual communications. To the extent that the Court places any further burden on WMATA to establish prejudice, the Court needs to compel the disclosure of the secret communications. While this case is not a typical civil action insofar as it solely involves judicial review of an interest arbitration award for compliance with the NCAIASA, at least part of the challenge raised by WMATA to the Second Supplemental Opinion requires discovery.[3] WMATA's demand for the communications at issue and the Union's blatant refusal to produce them constitutes a discovery dispute. The Federal Rules of Civil Procedure provide the Court with the inherent authority to resolve discovery disputes and compel production of documents. See Fed. R. Civ. P. 37.

When viewed in its proper context as a discovery dispute, the Union bears the burden of showing privilege or some other legitimate basis for non-disclosure. The Union cannot, however, carry that burden. Should the Union argue that the communications were privileged as deliberations of the arbitration board, it would underscore WMATA's position that Mr. Clark had the right to participate and that his deliberate exclusion by Mr. Kasher and Mr. Roth constituted impermissible misconduct. Not only does the Union exaggerate the purported consequences of disclosure, but its argument amounts to nothing more than a red-herring. The

---

[3] Such discovery is particularly necessary to fully afford WMATA its right to due process if the Court is not disposed to find merit to WMATA's challenge to the award based on the arbitrators' failure to comply with the provisions of Section 18303 of the NCAIASA.

communications at issue do not involve classified information or state secrets, so as to necessitate or warrant *ex parte in camera* review. See Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence Manual §§ 509.70 & 509.71 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed., 1999) (*ex parte in camera* hearings are generally disfavored but may be used under the Classified Information Procedures Act to allow the district court to decide the relevancy of information in determining whether to grant the government's claim of state secrets privilege). Indeed, to address the Union's express concerns, WMATA is willing to restrict public access to any disclosure of the communications by agreeing to either *in camera* review conditioned upon its participation or filing the communications under seal.[4] Thus, the Court unequivocally has the authority under the Federal Rules of Civil Procedure to compel disclosure, especially given the safeguards regarding the disclosure of the secret communications that indisputably occurred between Mr. Kasher and Mr. Roth to which WMATA is willing to agree.

For these reasons, WMATA respectfully renews its request that this Court compel the disclosure of all communications (whether written or oral) made exclusively between Mr. Kasher and Mr. Roth either through ordering *in camera* review where WMATA is provided access to the communications or requiring the communications to be filed under seal.[5] Absent such an order, WMATA respectfully submits that the Second Supplemental Opinion should be vacated either because it resulted from misconduct that "per se" prejudiced WMATA's rights or because the arbitrators failed to comply with the provisions of 40 U.S.C. § 18303 in rendering the award through their initial opinion, their Supplemental Opinion, or their Second Supplemental Opinion.

---

[4] Any written communications could easily be filed under seal. Any oral communications could either be memorialized in writing and placed under seal or could be shared during proceedings held *in camera* or conducted under seal.

[5] WMATA also asks to be afforded sufficient time to review the *ex parte* communications and to present additional argument on how its rights were prejudiced by the communications.

Respectfully submitted,

__/s/_ Lesley Pate Marlin_____
Robert G. Ames, Bar No. 03372
Kenneth R. Hoffman
Brian M. Hudson
Lesley Pate Marlin, Bar No. 16556
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4000
(202) 344-8300 (facsimile)
rgames@venable.com
lpmarlin@venable.com

Carol B. O'Keeffe, General Counsel
Bruce P. Heppen, Deputy General Counsel
WMATA
600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 962-1234
(202) 962-2550
cokeeffe@wmata.com
bheppen@wmata.com
Counsel for WMATA

-6-