COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY
MOTION DIVISION - CIVIL SECTION

FRATERNAL ORDER OF POLICE,    :
LODGE 5                              :
                                 :
        vs.                  :        APRIL TERM, 1993
                                 :
CITY OF PHILADELPHIA        :        NO.  1540

## ORDER

AND NOW, this 20TH day of May, 1993, upon consideration of the Petition of the Fraternal Order of Police, Lodge 5, for Review of Arbitration Award in the nature of a Petition to Vacate Award and Petition of Stay and Enjoin Enforcement of Award, it is hereby **ORDERED** and **DECREED** that Paragraph 5 of the Award insofar as it reduces temporary disability pay is vacated. In all other respects, the Petition is DENIED.

BY THE COURT:

GENE D. COHEN,       J.

COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY
MOTION DIVISION - CIVIL SECTION

| | | |
|---|---|---|
| FRATERNAL ORDER OF POLICE, | : | |
| LODGE 5 | : | APRIL TERM, 1993 |
| | : | |
| vs. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | NO.  1540 |

OPINION SUR PETITION
OF THE FRATERNAL ORDER OF POLICE, LODGE 5,
FOR REVIEW OF ARBITRATION AWARD
IN THE NATURE OF A PETITION TO VACATE AWARD

This matter is before the Court upon the Petition of the Fraternal Order of Police, Lodge 5 (hereinafter referred to as "FOP"). The Respondent is the City of Philadelphia (hereinafter referred to as "City"). The Petition seeks review of an Arbitration Award in the nature of a "Petition to Vacate Award and a Petition to Stay and Enjoin Enforcement of Award".

Petitioner, FOP, seeks an Order vacating the "Act 111" Arbitration Award issued on March 30, 1993 at Case No. 14L390 1114 92J by two members of the Act 111 Arbitration panel as well as the interim Award issued by the same panel on February 3, 1993. The FOP seeks an Order directing the parties to convene a new Arbitration panel for the purpose of conducting new hearings and issuing a new Award. FOP further seeks an Order staying and enjoining enforcement of the Arbitration Award issued on March 30, 1993.

The FOP is the bargaining agent for the approximately 6,000 members of the Philadelphia Police Department. The City is a

political sub-division of the Commonwealth of Pennsylvania designated as a City of the first class pursuant to Act of June 25, 1895, P.L. 275, Paragraph 1, as amended, 53 P.S., Paragraph 101. The Arbitration panel was appointed pursuant to the Act of June 24, 1968, P.L. 237, No. 111, Paragraph 1, et seq., 43 P.S., Paragraph 217.1, et seq. ("Act 111")

The FOP and the City are parties to a Collective Bargaining Agreement which governs wages, hours and working conditions of the City's police officers represented by the FOP. The existing Collective Bargaining Agreement covered the term from July 1, 1990 through June 30, 1992. Prior to the termination of the existing Agreement, the parties hereto exchanged proposals for changes in the Agreement. They were unable to agree on most issues.

Because the parties had reached an impasse and stalemate in the collective bargaining process and because police officers are deprived of the right to strike, a request was made for the appointment of an Arbitration panel pursuant to Section 4 of Act 111.

## ACT 111 v. GRIEVANCE ARBITRATION

An Act 111 Arbitration is what is referred to as an Interest Arbitration. An Interest Arbitration as contrasted to a Grievance Arbitration is an arbitration in which the neutral member and parties and members work to effect the next step in collective bargaining. Its an extension of collective bargaining. The role of the neutral arbitrator is to seek to find areas of compromise

2

and to seek and to find methods of encouraging the parties to settle their own disputes and to use mediatory skills to the extent that he or she is able to do that.    That is in contrast to Grievance Arbitration which is quasi-judicial in which an Arbitrator sits alone, ordinarily as the sole Arbitrator, hears facts, hears arguments, and renders an Award that not only contains the Award but should contain a detailed opinion.    That opinion guides the parties with respect to their rights.    Grievance Arbitration is frequently referred to as "Rights Arbitration" to determine the rights of parties under contracts and/or incorporated statutory provisions or civil service regulations and things of that type.    Interest Arbitration is essentially a Collective Bargaining Agreement process.

The Interest Arbitration panel is empowered to award any terms or conditions of employment to which a public employer and its police employees may voluntarily agree. <u>Township of Moon v. Police Officers of Township of Moon</u>, 498 A.2d 1305 (1985).

### HISTORY

The City appointed H. Thomas Felix, II, Esquire, as its Arbitrator.    The FOP appointed Richard Markowitz, Esquire, as its Arbitrator.    (It must be noted from the outset that for whatever reason which this Court cannot understand, Counsel/Presenter for the FOP, Stephen Richman, is a law partner of Markowitz).

3

The Arbitrators were then presented with a list of three Arbitrators from a list compiled by the American Arbitration Association. The City Arbitrator struck one name and then the FOP Arbitrator struck a name. The remaining name on the list who was to be the neutral Arbitrator and the Chairman of the panel was Richard Kasher, Esquire.

This Arbitration panel issued an interim Award on February 3, 1993 and a final Award was issued by the panel on March 27, 1993, although it was dated March 23, 1993. The FOP contends that the Awards of the Arbitrators were contrary to law, unjust, inequitable and unconscionable. It further contends that the Awards were in excess of the power of the Arbitrators.

FOP further contends that the Award was the product of improper behavior on the part of the neutral Arbitrator because of inappropriate ex parte communication with the City and its representatives. It also contends that the FOP Arbitrator was excluded from deliberations in arriving at the final Award.

The FOP contends that the record demonstrates that the neutral Arbitrator received ex parte communications from the City and its representatives.

The FOP especially emphasizes that Brian Pedrow, Esquire, an attorney with the firm representing the City, participated in confidential communications with the neutral Arbitrator during the course of the preparation of the final award. This contact, it is contended, so tainted the final award as to render it invalid.

4

The FOP further contends that the Award was not the result of the deliberations of the three Arbitrators; the FOP's Arbitrator having been excluded from the deliberative process.

It further contends that the Award was in several respects invalid, illegal and beyond the authority and jurisdiction of the panel of arbitrators.

The FOP alleged that if the Award is permitted to stand then deadlines would occur for the members of the FOP to decide on which health care program they wish to join as well as an opportunity for certain members to retire under the old Collective Bargaining Agreement which expired on June 30, 1992.  Both sides requested that the Court give this case a priority.

The City denied that the Award was the product of improper contacts between itself and the neutral Arbitrator and contended that there had been no substantive ex parte contacts; and that the contacts complained of were with the consent of the FOP Arbitrator and counsel who were in reality, one and the same.

The City further contended that the Award was legal and not unconscionable or unjust.

The City further contended that the Award was the result of extensive hearings and deliberations by all three members of the Arbitration panel.  It argued that following the hearings, the Arbitration panel held numerous executive sessions in which all Arbitrators participated and no one was precluded from stating his views.  The City stated that the panel held four meetings on the

5

following dates: January 4, January 8, February 1, and February 7 of

1993.     It further held two executive session by telephone

conference on March 2, 1993 and March 14, 1993.

## STATEMENT OF THE LAW

Act 111 provides in relevant part:

> "The determination of the majority of the
> Board of Arbitration thus established shall be
> final on the issue or issues in dispute and
> shall be binding upon the public employer and
> the policemen or firemen involved"...   No
> appeal therefrom shall be allowed to any
> accord.  Id. Section 217.7(a).

As set forth by the Supreme Court of Pennsylvania the standard
of review may be found in In Re: Appeal of Upper Providence Police,
Delaware County Lodge No. 27, Fraternal Order of Police from Award
of Arbitrators, 514 Pa. 501, 526 A.2d 315 (1987).   The Supreme
Court stated that the review of this type of Arbitration Award is
in the nature of a narrow certiorari.  Review under this standard
is thus limited to questions of jurisdiction, the regularity of
proceedings before the Arbitrator, questions in the exercise of
powers, and constitutional questions.

7

## HISTORY OF THE CASE BEFORE THIS COURT

This Court conducted evidentiary hearings on Saturday, May 1, 1993; Wednesday, May 6, 1993; Thursday, May 6, 1993; Friday, May 7, 1993; Saturday, May 8, 1993; Sunday, May 9, 1993; and Saturday, May 15, 1993. Each side was given the opportunity to present witnesses it felt relevant to the issues before this Court.  The Court excluded only one witness. The offer of proof for whom was that he was an expert in general Arbitration proceedings. This witness had no experience in Act 111 Arbitrations. This Court felt that it did not need the expert testimony that was being tendered.

The Petitioner introduced, over the course of the hearings, introduced into evidence, forty-four documents. The Respondents introduced thirty-four documents.  They are identified in the record of this case.

This Court conducted evidentiary hearings and heard testimony from the following witnesses:

1.   Thomas Lamb, Administrator of the Law Enforcement Health Benefits, Inc. - on the issue of illegality of the Award.

2.   Thomas W. Jennings, Esquire, Attorney for LEHB - on the issue of illegality of the award.

3.   Noreen Burns, Disabled Police Pensioner - on the issue of unconscionability.

4.   Leonard Knobbs, Executive Vice President and Chief

8

Financial Officer of the Police and Fire Medical Association, Inc. - on the issue of illegality of the award.

    5.   Alphonse Tumini, Esquire, Attorney for PFMA - on the issue of illegality of the award.

    6.   Brian McMullen, Disabled Police Officer - on the issue of unconscionability.

    7.   Donald McMullen, Disabled Police Officer - on the issue of unconscionability.

    8.   Stephen Richman, Esquire - Represented FOP in Arbitration proceedings.

    9.   Thomas Felix, II, Esquire, City's Arbitrator.

    10.  John Shaw, President, FOP.

    11.  Gene A. Rapone, Vice President, FOP.

    12.  Richard Markowitz, Esquire, FOP Arbitrator.

## CITY'S WITNESSES

    1.   Brian Pedrow, Esquire, on City Legal Team.

    2.   Richard Kasher, Esquire, neutral Arbitrator, Chairman of Panel.

    3.   David L. Cohen, Esquire, Chief of Staff to Mayor Edward Rendell.

    4.   Thomas Felix, II, City's Arbitrator.

## REBUTTAL WITNESSES

    1.   John Shaw, President, FOP.

    2.   Richard Markowitz, Esquire, FOP Arbitrator.

## GENERAL FINDINGS

The record and the testimony indicates that this was a very difficult and complex Arbitration process. Apparently, the parties could agree on little if anything. The panel held hearings and took testimony and received Exhibits regarding the issues in dispute which numbered in excess of one hundred. There were fourteen days of hearings.

At the outset, the Court finds that the claims of illegality, unconscionability, excess of power, and in violation of PICA to be without merit, with only one exception.

The disability payment provisions of appendix G which provide that "Employees shall be compensated at a rate of 75 % of base pay (which shall exclude overtime, shift differential, Paid hours, holiday pay and out of class pay) at the time of injury or recurrence.) Such employees shall not accrue vacation time and shall accept etc. This provision appears be a direct violation of 53 P.S 637 as amended, which requires that any disabled police officer or fire fighter be paid "his full rate of salary as fixed by ordinance or resolution, until the disability arising therefrom has ceased". The conflict of this paragraph with paragraph 631 of the same title has been resolved in the case of <u>Serge v. City of Scranton</u>, 529 A.2d 1191 (Pa. Cmwlth 1987). This part of the award shall be vacated.

The contention that the Award was improper under the PICA Act

10

53 P.S., Paragraph 12720.101, et seq. is completely without foundations. There is no violation of the Pennsylvania Inter-governmental Cooperation Authority Act, the cities of the first class, 53 P.S. ¶ 12720.101, et seq. (PICA). This Court finds that evidence of the financial condition of the City of Philadelphia was presented to the Arbitration panel. The issue of the financial condition of the City was discussed in great detail and mentioned in the final Award R-20 and the FOP Draft Award R-9. This Court is satisfied that the requirements of PICA 53, P.S. ¶12720.209(k) have been met.

The City's financial ability to pay and the City's financial plan have been accorded substantial weight. (The FOP's contention that it was accorded too much weight is without merit.) Further this Court interprets the statute's requirements of stating with specificity the factors which it took into account in considering and giving substantial weight to the city's financial ability to pay or the city's approved financial plan as having been met. A reading of the award clearly require such a finding.

An analysis of R-28, the 1992 Collective Bargaining Agreement when compared to R-9, the FOP draft Arbitration Award and R-20, the final Arbitration Award, clearly indicate that the City prevailed on most issues before the Arbitration panel. At first glance, this may seem unfair to the observer. However, fairness is not the standard of proof of unconscionability.

The Court has also reviewed R-33, the collective bargaining Agreement of District Council 33 and the City dated October, 1992

11

and of R-34, the Collective Bargaining Agreement of District Council 47 and the City dated October, 1992. It is clear on its face that on just about every economic issue, the City has prevailed.

The Court found that the testimony of Burns, McMullen and McMullen was not helpful to the issue of unconscionability. The Court can only say that the contract is unfair in that it requires give-backs of benefits which were achieved over the years. Black's Law Dictionary defines unconscionability as something that is "monstrously harsh and shocking to the conscience". This award does not approach that standard.

As to the issues of illegality in that the final Award requests the City to seek some fourteen million dollars in trust funds held by LEHB and PFMA, this Court, based upon the evidence, cannot say that this is an illegal Award. The demand for return of the funds is the subject of a separate law suit. The standard of illegality as set forth in the Appeal of Upper Providence Police, cited supra, sets forth that "illegality" requires the parties to perform an illegal act. Seeking return of trust funds is not an illegal act; and under those circumstances, this Court cannot find illegality.

As to the issues concerning an illegal delegation of authority concerning work schedules and civilianization, the Court finds that the Award adequately directs the parties on how they may proceed after the city exercises the authority given to them under the award dealing with civilianization and work schedules. Borough of

12

Dunmore v. Dunmore Police Association, 528 A.2d 279 (Pa.

1985). Although no evidence was introduced concerning these topics
the Court finds that the award speaks for itself and with
sufficient definition.

The FOP contends that the award reducing the pay of
temporarily disabled police officers to seventy-five per cent of
base pay compels the City to perform an illegal act. This Court
agrees with this position as stated earlier.

## FINDINGS OF FACT

1.    Pursuant to Act 111, the FOP appointed Richard H.
Markowitz, Esquire as its Arbitrators.    The City appointed H.
Thomas Felix, II, Esquire as its Arbitrator.    The American
Arbitration Association provided a list of three Arbitrators.    The
City Arbitrator struck the first name; the FOP Arbitrator struck
the second name; and the remaining name, Richard Kasher,
automatically became the neutral Arbitrator and the Chairman of the
panel.

2.    The FOP's case was presented by Stephen P. Richman,
Esquire, a partner of the FOP Arbitrator, who had a prior social
relationship with Kasher.

3.    The City's case was presented by Alan J. Davis, Esquire,
Dennis Arocca, Esquire, Brian D. Pedrow, Esquire, and Mark J.
Foley, Esquire.

4.    The panel held hearings over a five month period and met
on fourteen days for hearings.    All three Arbitrators were present
during the fourteen day of hearings.

5.    At the hearings, the City presented evidence of its
financial condition and of its five Year Plan.

6.    At the hearings, the Police and Fire Medical Association
and the Law Enforcement Health Benefits, Inc. presented evidence

14

and were represented by counsel.

7.   At the close of the hearings, the Chairman, the City Arbitrator and the FOP Arbitrator met in executive sessions on January 4, January 8, February 1, and February 12, 1993.

8.   The Chairman and the two Arbitrators also conferred by telephone conference on March 2, and March 14, 1993.   All three Arbitrators had the opportunity to discuss and state their views on any issue they wished during these meetings.

9.   The panel issued two interim Awards before the issuance of the final Award.  The first interim Award was issued on or about September 15, 1992 at the request of John Shaw, President of the FOP and directed the City to immediately pay all eligible police officers $325.00 for clothing allowance.   The interim Award was prepared by the FOP presenter (Richman) who than took it to Kasher's home where he obtained Kasher's signature.  This Award was also signed by the City.

10.  The second interim Award was issued on February 3, 1993 and involved the reduction of starting salaries for newly hired police officers.  The City Arbitrator had requested the issuance of this interim Award during the panel's February 1, 1993 executive session where it was discussed with the FOP and the Chairman.  The City requested the lower starting arrangement because it intended to start a new class of police recruits.

11.  After the February 1 executive session, the City's Arbitrator prepared the interim Award and forwarded it to the FOP's Arbitrator by a hand-delivered letter dated February 2, 1993 (P-7).

15

12.  On February 3, 1993 the City Arbitrator took the proposed interim Award to the home of the Chairman and obtained his signature.

13.  The FOP Arbitrator issued a dissent to the interim Award lowering the starting salaries of police officers.

14.  This interim Award was later incorporated into the final Award.

15.  On or about February 24, 1993 Kasher forwarded to the parties a draft Award (P-24) that he prepared and signed and then left for Sarasota, Florida.

16.  The Chairman expressed the hope that the draft Award would aid and initiate further bargaining between the parties.

17.  The Chairman commenced working on the draft Award on February 12, 1993.

18.  The Chairman was assisted in the preparation of the draft Award by Brian Pedrow, Esquire, an attorney with Ballard, Spahr, Andrews and Ingersoll, and part of the City's legal team pursuant to an agreement of the parties that he would assist in the assembling of appendices that would be attached to the Award.

19.  The use of Pedrow in the assembly of these appendices was administrative and paralegal.

20.  At the time of the issuance of the draft Award, the FOP Arbitrator was on vacation.

21.  As a result of the draft Award being issued there were a series of meetings between John Shaw, President of the FOP, Gene Rapone, Vice President of the FOP, and David L. Cohen, who

16

discussed the Award.

22.  Pursuant to these discussions certain modifications to the Award were agreed to by the parties (the Court does not accept as true the testimony of the President of the FOP that he did not agree to any modifications or that there were no changes agreed upon to the draft Award with the purpose of incorporating them into the permanent Award.)

23.  The agreed upon changes to the draft Award were compiled in and are reflected by documents R-31, P-37 and P-38 and R-18.

24.  On March 2, 1993 the Arbitration panel held a telephone conference call.  During that call, the partial Arbitrators reported to the Chairman that there had been a meeting between Mr. Cohen and Mr. Shaw and that they had worked out certain agreements, modifications to the draft Award.  At the Chairman's request, the FOP Arbitrator and the City Arbitrator agreed that these agreements would be forwarded to the Chairman for his use in preparing a final Award.

25.  These modifications were sent directly to the Chairman by David L. Cohen.  P-37.

26.  In a letter dated March 4, 1993, P-38, the FOP Arbitrator set forth his understanding of what had been agreed to by the parties and sought to further clarify the FOP's position on the merits of the draft Award and of the merits of the principal issues in dispute.  In this letter, he objected to the letter from David L. Cohen directly to Kasher.

27.  On March 14, 1993 the panel had another telephone

17

conference call during which the Arbitrators engaged in further discussions and it became clear to the Chairman that there would be no more movement towards agreement.  He stated that he would proceed to draft a final Award.

28.  In the March 14 conference call the Chairman informed the other Arbitrators that he would use Brian Pedrow for the purpose of providing technical-clerical assistance.  The other Arbitrators agreed. (The Court cannot accept as true the statement of Richard Markowitz, Esquire that he did not agree to the use of Brian Pedrow for providing technical-clerical assistance).

29.  In discussions with Brian Pedrow, Kasher informed him that the work in the preparation of the Award must be kept confidential.  Pedrow then received the consent of his superior in the law firm, Alan Davis, Esquire, and both received the consent of David Cohen for Mr. Pedrow to maintain the work that he did for the Chairman to be kept confidential from all parties.

30.  From March 16, 1993 through March 18, 1993 Pedrow and Kasher conducted telephone conversations for the purpose of making revisions and modifications to the draft Award.

31.  On March 18, 1993 Pedrow sent a working draft to the Chairman in Sarasota, Florida.  (The absence of this draft in the possession of Pedrow and its failure to be produced has been adequately explained to the Court and has been the subject of a separate investigation which the Court had authorized the Petitioners to conduct.  The Court will draw no adverse inference from its failure to be produced.)

18

32. Pedrow spoke with Kasher again and was given further instructions for revisions.

33. On March 23, 1993 Kasher requested that Pedrow reproduced three copies of the draft with revised appendices as well as mailing labels for the FOP Arbitrator and the City Arbitrator to be mailed to the Chairman.

34. On March 23, 1993 the FOP filed a Motion with the AAA to disqualify the Chairman (P-39). By letter dated March 25, 1993 the AAA informed the FOP that the AAA had no jurisdiction over the Motion.

35. The Chairman ignored the Motion to Disqualify.

36. The FOP Arbitrator consented to Mr. Pedrow's assisting Mr. Kasher and by necessary implication to communications between Mr. Pedrow and the Chairman to which the other Arbitrators would not be parties.

37. The final Award issued by Richard Kasher was the work product of Richard Kasher and was not influenced by Brian Pedrow.

38. The Court found that the testimony of Richard Kasher, Esquire to be credible and forthright. The Court credits his testimony when he said that he acted with the consent of the other Arbitrators in his dealings with Brian Pedrow.

39. The Court finds that there was no evidence that this neutral Arbitrator conducted himself in an improper manner.

40. The Court finds that the involvement of Brian Pedrow in the compilation of the final award to be administrative and not all substantive.

19

41. The Court finds that the testimony of the partial Arbitrator, Richard Markowitz, not to be credible in certain areas, most particularly, his lack of consent to Brian Pedrow's participation in the compilation of the final Award.

42. The Court finds Mr. Markowitz' testimony that he did not consent to Pedrow's providing assistance not to be credible.

43. The Court also finds not to be credible the testimony of the President of FOP, John Shaw when he said that he did not agree to a reduction in the starting salaries initially and that he made no further agreements with David Cohen after the issuance of the draft Award.

44. During this Arbitration and deliberation period the Chairman was not threatened, coerced or induced by anything of value to make his Award.

45. The substance of the award was not influenced by the conduct of Brian Pedrow in his assistance to Richard Kasher.

20

## CONCLUSIONS OF LAW

1.     There were no improper contacts between any of the parties and the neutral Arbitrator, Richard Kasher, Esquire.

2.     The final Award is not illegal and compels no illegal conduct with the exception of the disability provisions of appendix G which shall be vacated.

3.     The final Award is not unconscionable.

4.     The final Award is not unconstitutional. (This area was not argued by the parties.)

5.     The Arbitration Award does not exceed the jurisdiction of the Arbitrators in an Act 111 Interest Arbitration.

6.     The issues in the Award involve issues that were properly placed in dispute by the parties.

7.     The final Award does not violate the provisions of PICA and the Court finds that it is consistent with the requirements of PICA.

8.     The Motion to Disqualify filed by FOP is of no legal efficacy and therefore it was not necessary to respond to it. (P-39).

9.     The sections of the award dealing with civilianization and work schedules are not invalid delegations of responsibility.

10.    The section of the award calling for a reduction in the temporary disability payments calls upon the city to perform an illegal act and will be vacated.

21

## CONCLUSION

The Court concludes that due in no small part to the brilliance and perseverance of FOP counsel, Richard Sprague, Esquire, the proceedings of this arbitration have been subjected to a scrutiny which may be compared to putting a specimen in a microscope and finding that tiny particles of dust have settled on the slide. Under the magnification of the microscope the particles appear to be fire-breathing dragons of contamination but, in the overall context of the arbitration, and of these proceedings, there are no monsters; only mere particles of dust.

The award was the result of an Act. 111 arbitration that was constrained and restrained by PICA. The ostensible unfairness to the FOP was brought about by something that such arbitrations had heretofore never been forced to face; and that was the Financial condition of the City of Philadelphia as an "assisted city".

The evidence in this case leads the Court to the opinion that there was too much internal pressure on the FOP leadership and its representatives in this arbitration process and the aftermath. This apparently overwhelming desire to distance themselves from what appeared to be an unfair and inequitable but albeit necessary result led them into this very expensive litigation and injured their credibility. The assault on the integrity of the neutral arbitrator was unfair, unworthy and ignoble.

Illustrious and indefatigable Counsel for the FOP, in his

22

final argument before this Court, argued that the six thousand plus
men and women who daily place their life and limb in jeopardy in
the service of their community cannot be certain that the award
that directly affects their livelihood was arrived at in a fair
manner by an impartial arbitrator whose only concern was to do the
correct thing.

This Court has listened to the witnesses and the arguments,
reviewed the evidence, reviewed the exhibits, reviewed the law
and finds as a matter of law  that the award was arrived at in a
fair manner, by a fair and impartial arbitrator whose only concern
was to do the correct thing; and meet his responsibility to his
assignment.

With the exception of the temporary disability clause , **THE
PETITION OF THE FOP WILL BE DENIED.**

BY THE COURT:

5/20/93

GENE D. COHEN, J.

23